IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MANUEL A. YBARRA, JR.,                                      CV. 06-807-HU
                          Plaintiff,

v.                                                          FINDINGS AND
                                                           RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                          Defendant.
_____

HUBEL, Magistrate Judge:

INTRODUCTION

        Plaintiff Manuel Ybarra ("Ybarra") brings this action for judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his application for Social Security disability insurance benefits ("DIB") under Title II and

supplemental security income ("SSI") under Title XVI of the Social Security Act.  This court has

jurisdiction under 42 U.S.C. § 405(g).   For the reasons set forth below, this court recommends

remanding this case for further administrative proceedings consistent with this opinion.

BACKGROUND

Ybarra was 58 years old at the time of the hearing.  He completed the eleventh grade.  He worked in the past as a machine operator, plastic parts inspector, dental laboratory technician, delivery driver, and assembly worker.

Ybarra alleges disability based on four back surgeries, diabetes, hepatitis C, and an inflamed liver. AR 98.[1]  He claims these conditions cause the following symptoms:  inability to lift, sit or stand for long periods of time, sight problems, and pain. Id.  At various time, Ybarra was diagnosed with various spinal conditions, asthma, depression/anxiety, hypertension, and type II diabetes.  He was laid off in March 2003 due to lack of work.  He testified that he does not think he could do that job anymore because his back pain has worsened and he has to change position frequently due to his pain.  AR 39-40.  He testified that he does not think he could be a delivery driver anymore due to leg pain caused by operating the brake and gas pedals.  AR 41.  Overall, he testified that he did not think he could perform any of his past jobs due to back pain.  AR 42.

Ybarra protectively filed applications for DIB and SSI on September 18, 2003, alleging disability beginning March 15, 2003.  The applications were denied initially and upon reconsideration.  On October 17, 2005, a hearing was held before an Administrative Law Judge ("ALJ").  In a decision dated February 17, 2006, the ALJ found Ybarra not disabled and therefore not entitled to benefits.  On April 7, 2006, the Appeals Council denied Ybarra's request for review, making the ALJ's decision the final decision of the Commissioner.  Ybarra seeks judicial

---

[1]Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

Page 2 - FINDINGS AND RECOMMENDATION

review of the Commissioner's decision, and requests a remand of this matter to the agency for further administrative proceedings to correct legal errors made by the ALJ.

STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

Page 3 - FINDINGS AND RECOMMENDATION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). "The proper course, except in rare circumstances, is to remand to the agency for further investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886-87 (9th Cir. 2004), citing INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam).

MEDICAL RECORDS

The medical records accurately set forth Ybarra's medical history as it relates to his claims. The court has carefully reviewed all the records, and the parties are familiar with them. Accordingly, only a summary of the medical records that are relevant to Ybarra's legal arguments appears below.

Ybarra's spinal problems date back to 1980 when he injured his lower back at work, causing severe pain and lower extremity weakness. This injury led to four back surgeries between 1986 and 1993. AR 194, 321. Ybarra experienced improvement for a time after various surgeries, but ultimately his lower back pain returned.

In July 2000, a lumbar spine MRI showed Grade 1 spondylolisthesis[2] L5 on S1 with bilateral pars interarticularis defects, minimal disk bulging al L4-5, but no disk protrusion, and persistent degenerative hypertrophic changes at facet joints L4-5 showing interval increase from prior studies done in October 1991. AR 212-13.

In March 2003, an exam found point tenderness along Ybarra's lower lumbar spine. AR 188. He was continued on vicodin and ibuprofen for his back pain, and also prescribed

_____

[2]Spondylolisthesis is the forward displacement of one of the lower lumbar vertebra over the vertebra below it or on the sacrum.

Page 4 - FINDINGS AND RECOMMENDATION

methocarbamol and referred to a free acupuncture clinic.  Id.

In November 2003, Ybarra received an orthopedic exam by Dr. Ogisu who found that Ybarra's effort was "mostly good but is questionable during the manual muscle testing portion of the exam." AR 195.  That exam also found that his mid-thoracic paraspinals appeared to be in spasm, and that the lumbar paraspinals were atrophied.  Tenderness was diffusely present over the lumbar area, especially in the left lumbosacral area.  Straight leg raise was limited by lumbar pain.  Range of motion in several tests also was limited by lumbar pain.  Dr. Ogisu's impression was chronic low back pain with the only clearly identifiable neurologic deficit as some sensory decrease in the right deep peroneal distribution.  He assessed the following functional limitations: sit for four hours of an eight-hour workday, stand and walk for at least two hours out of an eight-hour workday, lift and carry 20 pounds or more on an occasional basis.  AR 197.

In December 2003, an MRI of the lumbar spine showed degenerative arthritis and degenerative disk disease at L5-S1 with 1-cm anterior spondylolthesis of L5 on S1.  The MRI also showed marked hypertrophic facet joint arthritis L4-5 and L5-S1 bilaterally.  In the category of "mild" conditions, the MRI showed mild stenosis at L4 and L5, mild degenerative arthritis and disk degeneration L4-5, and mild nonencroaching broad-based disk bulge.  The only significant change noted in this study was the facet joint degenerative arthritis and disk degeneration changes that advanced at L4-5 and L5-S1 since the exam of July 2000.  AR 207-08.

In December 2003, Ybarra was given a comprehensive psychological evaluation by Dr. Wicher.  AR 214-18.  She questioned whether he was putting forth full effort in that he tended to give up easily on challenging tasks.  AR 216.  She diagnosed him with mild, chronic depression, and the following:

| AXIS I: | 300.4 Dysthymic Disorder. Polysubstance abuse, in somewhat inconsistent remission. |
|---|---|
| AXIS II: | Rule/Out 301.7 Antisocial Personality Disorder. |
| AXIS III: | Chronic pain, diabetes, hepatitis, hypertension. |
| AXIS IV: | "Marital" separation, unemployment, lack of income, serious health problems. |
| AXIS V: | GAF=55. |

AR 217. Dr. Wicher found Ybarra's depressive symptoms were not so severe that they would have significant impact on his level of functioning or preclude returning to full-time work. AR 218. However, she also mentioned that his psychological difficulties in combination with his physical problems could make it more difficult to sustain full-time work. Id.

In January 2004, Dr. Jensen completed a functional capacity assessment for DDS based on a review of Ybarra's records. AR 234-41. For exertional limitations, Dr. Jensen found that Ybarra could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, was unlimited in pushing or pulling. For postural limitations, Dr. Jensen found that Ybarra only climb ramps or stairs occasionally, never climb ladders, ropes or scaffolds, and do only occasional stooping and crouching. She found no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations.

In September 2004, Ybarra was in a motor vehicle accident and subsequently was treated for pain in his neck and shoulders. AR 303. He completed eight physical therapy sessions from September to November 2004 which he reported gave him no pain relief though a physical therapist observed that he had greater lumbar spine range of motion and cervical spine motion during functional movements than when asked to move these areas. AR 254. X-rays in October 2004 showed nothing acute but did reveal severe C6-7 disk degeneration with end plate

Page 6 - FINDINGS AND RECOMMENDATION

osteophytes, more moderate degeneration at C5-6, and milder disease at C4-5.  AR 311.

In November 2005, Ybarra received a comprehensive orthopedic evaluation from Dr. Schludermann who noted that Ybarra's effort was markedly reduced and there were numerous inconsistencies with strength and range of motion maneuvers that limited the evaluation.  AR 324, 327.  He noted that Ybarra tried tandem walking and that it was unsafe, that he tried heel walking which also looked unsafe but effort seemed reduced, and that he was unable or declined to do toe walking.  AR 324.  He documented Ybarra's objective imaging studies of moderate to severe degenerative changes and arthritis in the lumbar spine, and some sensory radicular findings on the right side.  AR 327.  Dr. Schludermann found diffuse and severe tenderness in the right side of Ybarra's neck and in the entire thoracic and lumbar spine in the middle as well as many other areas.  AR 326.  Dr. Schludermann was unable to confirm changes in strength or significant reflex changes as a result of Ybarra's low back pain with severe degenerative joint disease, and saw little in the way of consistent objective findings and no findings of radiculopathy with regard to Ybarra's neck pain with severe degenerative changes.  AR 327.  Dr. Schludermann gave the following exertional limitations:  able to lift and/or carry 25-30 pounds occasionally; able to lift and/or carry 10-15 pounds frequently; able to stand and walk three to four hours in an eight-hour workday; and no restrictions on sitting.  For postural limitations, Dr. Shludermann found Ybarra limited in upper and lower extremities on pushing and pulling; assessed no climbing, crouching, crawling or stooping; and only occasional balancing and kneeling.  For manipulative limitations, Dr. Shludermann assessed only occasional reaching, but frequent handling.  For environmental limitations, Dr. Shludermann noted plaintiff's hearing reduction for high frequencies, and assessed limitations on temperature extremes, dust, vibration,

humidity/wetness, hazards, and fumes, odors, chemicals and gases.  AR 330-333.

Ybarra was diagnosed with type II diabetes in August 2003 and was prescribed insulin and other medication on an ongoing basis.

Ybarra had a history of substance abuse.  At the time of the hearing he continued to participate in a methadone program and was abstaining from drugs and alcohol.

Ybarra was diagnosed with depression and anxiety, and treated at various times with Prozac, Zoloft, Paxil, Diazepam, Clonazepam, Effexor, and Wellbutrin.  He reported these medications gave him inconsistent relief from his ongoing condition.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One.  The ALJ determines whether claimant is engaged in substantial gainful activity.  If so, claimant is not disabled.  If claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two.  The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities.  If not, the claimant is not disabled.  If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three.  The ALJ next determines whether claimant's impairment "meets or equals"

one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five. The ALJ determines whether claimant is able to do any other work. If not, claimant is disabled. If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do. The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the ALJ does not meet this burden, claimant is disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

///

///

Page 9 - FINDINGS AND RECOMMENDATION

THE ALJ'S FINDINGS

At step one, the ALJ found that Ybarra had not engaged in substantial gainful activity  at any time since the alleged onset date.  AR 16.  This finding is not in dispute.  At step two, the ALJ found that Ybarra had the following severe impairments:  lumbar spine disorder causing chronic low back pain, and history of surgeries.  Id.  This finding is in dispute.  At step three, the ALJ found that none of Ybarra's impairments met or equaled a listing.  AR 18.  This finding is in dispute.

In determining residual functional capacity ("RFC"), the ALJ found that Ybarra retained the ability to perform light exertion work.[3]  The ALJ found that Ybarra was able to sit at least six hours in an eight-hour workday, he was able to stand and walk two hours each in an eight-hour workday, and that he had no postural, manipulative, visual, communicative, or environmental limitations.  AR 18.  This finding is in dispute.

At step four, the ALJ found that Ybarra was able to perform his past relevant work as a plastic parts inspector, circuit board maker, and dental laboratory technician.  AR 21.  This finding is in dispute.  The ALJ made no finding at step five.

DISCUSSION

Ybarra contends that the ALJ erred by:  (1) improperly rejecting the opinion of examining physician Peter Schludermann, M.D.; (2) finding some of Ybarra's impairments non-severe; (3) improperly rejecting Ybarra's testimony; and (4) providing step four findings that lacked foundation.  Ybarra requests a remand for further proceedings.  The Commissioner contends that

---

[3]"Light exertion work" involves occasionally lifting or carrying objects weighing up to twenty pounds, and frequently 10 pounds.  AR 18.

the ALJ's decision is supported by substantial evidence and should be affirmed.

Opinion of Peter Schludermann, M.D.

At the request of Disability and Determination Services ("DDS"), Dr. Schludermann performed a comprehensive orthopedic evaluation of Ybarra on November 22, 2005.  He reviewed 150 pages of medical records, spent nearly two hours examining Ybarra and administering tests, and produced at nine-page report detailing Ybarra's physical condition and functional limitations.  AR 320-28.  His specific diagnosis and functional capacity assessment is detailed above.

When an ALJ rejects an examining physician's opinion, the ALJ is required to state clear and convincing reasons if the opinion is uncontroverted, and specific, legitimate reasons supported by substantial evidence in the record if the physician's opinion is in conflict with another physician's opinion.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).   Physicians' opinions that are explained are entitled to more weight than those that are not.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also 20 C.F.R. § 404.1527(d)(3).

Ybarra argues that the ALJ improperly rejected the exertional limitations set out by Dr. Schludermann, except for the limitation on lifting/carrying.  This court agrees in part.  For exertional limitations, the ALJ's determination that Ybarra "is able to stand and walk two hours each in an eight-hour workday" for a total of four hours is supported by the record.  Dr. Schludermann assessed Ybarra as being able to stand or walk for three to four hours in an eight-hour workday.  AR 330.  DDS examining physician Dr. Ogisu assessed Ybarra as being able to

stand and walk for at least two hours in an eight-hour workday.[4]  AR 197.  For sitting, the ALJ's

determination that Ybarra could sit at least six hours in an eight-hour workday is supported by

the record.  Dr. Schludermann assessed no limitations on sitting.  AR 331.  Dr. Ogisu assessed

that Ybarra could probably sit for four hours of an eight-hour workday.  AR 197.  DDS reviewing

physician Dr. Jensen assessed that Ybarra could sit about six hours in an eight-hour workday.

AR 235.

For pushing and pulling, the ALJ's determination that Ybarra had no limitations is not

supported by the record.  Dr. Ogisu assessed no limitations on pushing and pulling whereas Dr.

Schuldermann assessed Ybarra as limited in upper and lower extremities but did not describe the

nature and degree of the limitations.  AR 331.  Dr. Schludermann listed the following as his

medical/clinical findings to support his conclusion:  "Severe cervical and lumbar arthritis on

imaging studies as well as reduced range of motion and some weakness of extremities (although

effort reduced)"  Id.  The ALJ failed to address Dr. Schludermann's exertional limitation on

pushing and pulling.  While the ALJ may reject any part of a physician's report, the ALJ must

provide specific and legitimate reasons for doing so that are supported by the record.  Lester, 81

F.3d at 830-31.  Here, the ALJ repeatedly mentioned Ybarra's lack of credibility based on

reduced effort, but never addressed Dr. Schludermann's conclusion that some of Ybarra's

functional limitations were based on objective medical evidence of record, including his 2000

and 2003 MRIs.  The ALJ erred in failing to address pushing and/or pulling limitations in

_____

[4]The court notes that DDS reviewing physician Dr. Jensen assessed Ybarra as being able
to stand and/or walk at least 2 hours in an 8-hour workday.  However, the medical opinion of a
reviewing physician is entitled to less weight than that of a treating or examining physician.  See
Lester, 81 F.3d at 830.

formulating Ybarra's residual functional capacity.

> For postural limitations, the ALJ wrote the following:

> Dr. Schludermann stated the claimant should be limited to no climbing, crouching, crawling, or stooping, and occasionally balancing and kneeling.  However, he had also noted reduction in effort and inconsistencies strength in [sic] range of motion maneuvers (Exhibit 13F/157).  Therefore, I find no adequate basis in support of postural limitations.

AR 21.  Ybarra contends that the ALJ's reliance on Dr. Ogisu's opinion that Ybarra had no postural limitations and rejection of Dr. Schludermann's opinion was error.  This court agrees. Dr. Schludermann's opinion was that Ybarra should never climb ramps/stairs/ladders/ropes or scaffolds, and never crouch, crawl or stoop.  AR 331.  While Dr. Schludermann did mention Ybarra's reduced effort and inconsistencies in strength and range of motion maneuvers at certain points during the examination, Dr. Schludermann noted the following when assessing Ybarra's postural limitations:  "Reduced balance and risk of falling with climbing and balancing./  Severe DJD [degenerative disc disease] of L & C [lumbar and cervical] spine with some R leg radiculopathy."  Id.  Thus Dr. Schludermann's opinion on postural limitations was based on the objective evidence of the severity of Ybarra's degenerative diseases as well as the results of his examination which found radiculopathy, as opposed to any of his findings that may have been compromised by Ybarra's lack of effort.  The ALJ erred in failing to address this objective medical evidence on which Dr. Schludermann's postural limitations were based.  The court further notes that Dr. Ogisu did not examine Ybarra's medical records and only considered medical background provided by Ybarra himself during the examination.  AR 194.  In contrast, Dr. Schludermann reviewed approximately 150 pages of Ybarra's medical history, including MRI reports from 2000 and 2003 that showed marked disc degeneration and degenerative

Page 13 - FINDINGS AND RECOMMENDATION

arthritis over the years.  AR 207-08, 213, 321.  Also, Dr. Ogisu's evaluation was conducted

nearly two years prior to Dr. Schludermann's evaluation.  Logically, Ybarra's degenerative

conditions may have worsened, accounting for discrepancies between the two evaluations

including Dr. Schludermann's finding of radiculopathy.  As such, the ALJ's reliance on Dr.

Ogisu's evaluation to discredit Dr. Schludermann's evaluation was error.  The ALJ's finding as

to Ybarra's postural limitations was not legitimate and was not supported by the record.

     For manipulative, visual/communicative and environmental limitations, the ALJ wrote

the following:

> I clarify whereas Dr. Schludermann noted manipulative limitations, communicative
> and environmental limitations, I find no adequate objective basis to support them.
> (Exhibit 13F/155-56).  Dr. Schludermann stated the manipulative limitations were
> based on reduced speed and accuracy of handling, and inability to reach about the
> shoulder.  The communicative limitation was based on markedly reduced high
> frequency hearing, but canals were impacted with wax.  The environmental
> limitations were based on asthma and poor balance.  However, these are either based
> on non-severe impairments, or findings on examination which were affected by the
> claimant's inadequate effort and/or discrepancies in strength and range of motion.
> Regarding asthma, the claimant has been a smoker throughout the period under
> consideration in this decision, and such has not prevented work in the past.  About
> the poor balance, the evidence has not established the medical need for an assistive
> device.

AR 21.  Ybarra argues that the ALJ improperly dismissed Dr. Schludermann's manipulative

limitations because they were based on non-severe impairments, or on findings which were

affected by Ybarra's reduced effort and/or inconsistencies with strength and range of motion

maneuvers.  This court agrees.  Dr. Schludermann assessed Ybarra as limited to occasional

reaching (including overhead) and frequent handling (gross manipulation), and assessed no

limitations on fingering (fine manipulation) or feeling (skin receptors).  AR 332.  As

medical/clinical findings to support these limitations, Dr. Schludermann wrote: "Reduced speed

and accuracy of handling–almost dropped 10 cm cannister unable to reach about shoulder–especially left with rotator cuff symptoms." Id. Unlike other portions of his evaluation where Dr. Schludermann specifically referred to Ybarra's reduced effort or other inconsistencies in examination results when explaining his findings, here Dr. Schludermann based his assessment of Ybarra's postural limitations on objective medical findings. See, e.g., AR 327 (Dr. Schludermann's sensory exam of Ybarra noted deficiencies but explained that inconsistencies caused the deficiencies and no limitation on fingering or feeling was made). Also, the ALJ erred in dismissing Dr. Schludermann's assessed limitations that were based on non-severe impairments. Under Social Security regulations, the ALJ must consider all of a claimant's medically determinable impairments, including medically determinable impairments that are not "severe" when assessing residual functional capacity. 20 C.F.R. § 404.1545(a)(2). The ALJ's failure to address Dr. Schludermann's legitimately assessed manipulative limitations was error.

Regarding communicative limitations, Dr. Schludermann assessed Ybarra as limited in hearing but wrote, "conversational hearing OK/markedly reduced high frequency hearing but canals impacted with wax." AR 332. Based on this explanation and the lack of evidence in other parts of the record to support a finding of hearing impairment, the ALJ's finding that Ybarra did not have communicative limitations should be upheld.

Regarding environmental limitations, Dr. Schludermann assessed Ybarra as limited with regard to temperature extremes, dust, vibration, humidity/wetness, hazards (machinery, heights), and the category of fumes, odors, chemicals, and gases. AR 333. For medical/clinical findings with regard to these limitations, Dr. Schludermann wrote: "has asthma and should avoid lung irritants and temp/wet extremes. Balance is poor. Attention and effort are reduced. Vibration

would likely increase DJD [degenerative disc disease] of L & C [lumbar and cervical] spine symptoms." Id. Ybarra contends that the ALJ erred in dismissing Dr. Schludermann's environmental limitations based on incorrect conclusions regarding Ybarra's history of asthma and poor balance. This court agrees. First, the court notes again that the ALJ should have considered all of Ybarra's impairments, including the non-severe impairment of asthma, in assessing Ybarra's residual functional capacity. Also, with regard to Ybarra's asthma, there is no evidence in the record that Ybarra's smoking and asthma were related such that the ALJ's reliance on Ybarra's history of smoking to discredit Dr. Schludermann's consideration of asthma in assessing environmental limitations was not legitimate or supported by the medical record. Thus Dr. Schludermann's assessment of limitations based on temperature extremes, dust, humidity/wetness and the category of fumes, odors, chemicals and gases should be upheld. Dr. Schludermann's assessment with regard to vibration was based on the objective medical evidence of degenerative disc disease of the lumbar and cervical spine. Dr. Ogisu also opined that Ybarra "should probably avoid excessive vibration." AR 197. The ALJ erred in dismissing that limitation without providing specific reasons supported by the record.

Finally, with regard to hazards, the ALJ's finding that Ybarra has not established the medical need for an assistive device is not dispositive on the issue of whether Ybarra is capable of performing in a work environment where hazards such as machinery and heights are present. Taking into consideration Ybarra's reduced effort and other discrepancies during his examination, Dr. Schludermann still found deficiencies during Ybarra's examination that would lead him to conclude that Ybarra's balance was poor. See AR 324 (tandem walking was tried

and was unsafe); AR 323 (antalgic[5] gait); AR 323 (had to hold onto a wall cabinet to get off

exam table and was unsteady).  As such, Dr. Schludermann's assessment of Ybarra as limited

with regard to hazards was supported by the medical record and the ALJ failed to provide the

required legitimate reasons supported by substantial evidence to dismiss that assessment.

<u>Non-Severe Impairments</u>

Ybarra contends that the ALJ erred in finding the following impairments non-severe:

neck impairment, lumbar radiculopathy, and diabetes.  The Commissioner fails to provide a

response to this argument.

An impairment is severe for the purposes of step two of the evaluation process if it

significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. §

416.920(c).  Basic work activities are the abilities and aptitudes necessary to do most jobs.  <u>Id.</u> at

§ 404.1521(b).  These include physical functions, such as seeing, hearing, speaking, walking,

standing and sitting, and mental functions, such as understanding, remembering, using judgment

and responding appropriately to work situations.  20 C.F.R. §§ 404.1521(b), 416.921(b).

An impairment can be found "not severe" only if it is a minor abnormality that has no

more than minimal effect on the claimant's ability to work.  <u>Smolen v. Chater</u>, 80 F.3d 1273,

1290 (9th Cir. 1996).  The inquiry at step two is a <u>de minimis</u> screening tool to dispose of

groundless claims.  <u>Id.</u>  The burden to show a medically determinable severe impairment is on

the claimant.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987).  A severe impairment must be shown

by medically acceptable clinical and laboratory diagnostic techniques – established by signs,

symptoms and laboratory findings, not only by statements of the claimant.  20 C.F.R. § 404.1508.

---

[5]Antalgic gait is a limp adopted so as to avoid pain on weight-bearing structures.

Page 17 - FINDINGS AND RECOMMENDATION

The ALJ discussed and listed the following impairments as non-severe:  Dysthymic Disorder and Polysubstance Abuse, claimed remission.  AR 17.  The ALJ also mentioned hepatitis C which was not active, and that Ybarra had been diagnosed with diabetes mellitus, "which appears to be under adequate control with insulin management."  AR 18.  The ALJ discredited Ybarra's neck complaints when he found that "complaints of neck and legs [sic] pain have not been adequately sustained."  AR 18.  Ybarra assigns error to the ALJ's failure to consider cervical x-rays performed in October 2004 after a motor vehicle accident, and Dr. Schludermann's assessment of Ybarra's neck pain in 2005.  AR 311, 327.  The 2004 x-rays were performed because of Ybarra's persistent neck pain and found "severe C6-7 disc degeneration with end plate osteophytes, more moderate degeneration at C5-6 and milder disease at C4-5." AR 311.  The x-ray is an acceptable laboratory diagnostic technique that meets the requirements for establishing a step two severe impairment.  In his assessment and diagnosis section, Dr. Schludermann wrote the following:  "neck pain with severe degenerative changes on imaging studies but little in the way of consistent objective findings and no findings of radiculopathy." AR 327.  Dr. Schludermann also mentions Ybarra's cervical degenerative disc disease when assessing exertional and postural limitations such that basic work activities that include lifting, carrying, standing and/or walking may be impacted.  AR 330-31.  Thus Ybarra has met his burden of establishing a step two neck impairment and the ALJ erred by not considering the objective medical evidence and related limitations.  With regard to Ybarra's lumbar radiculopathy, the ALJ noted, in error, that Dr. Schludermann made no finding of radiculopathy when, in fact, Dr. Schludermann noted "some sensory radicular findings on the right" and "some R leg radiculopathy."  AR 327, 331.  Dr. Ogisu also made findings that Ybarra's lumbar

Page 18 - FINDINGS AND RECOMMENDATION

paraspinal muscles were atrophied. AR 195. Dr. Schludermann also mentioned radiculopathy in assessing Ybarra's postural limitations. AR 331. Thus the ALJ erred in not considering Ybarra's lumbar radiculopathy at step two. With regard to diabetes, however, this court finds that the medical evidence does not establish the existence of any functional limitations based on diabetes such that the ALJ did not err in finding diabetes a non-severe impairment.

Ybarra's Testimony and Credibility

Ybarra presents a one-paragraph argument that the ALJ erred in rejecting much of his testimony based on lack of credibility, but fails to specify which credibility determinations were made erroneously.

If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Lester, 81 F.3d at 834 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Smolen, 80 F.3d at 1284 (citations omitted). An ALJ is not required to believe every allegation made by a claimant or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. 423(d)(5)(A).

Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Ybarra contends that the ALJ's errors in analyzing the medical and opinion evidence undermine the ALJ's conclusions about Ybarra's credibility, and that the ALJ did not provide clear and convincing reasons for rejecting Ybarra's testimony.  This court disagrees.  Because Ybarra fails to specify which of the ALJ's credibility findings were unsupported, this court is forced to guess at Ybarra's arguments.  Overall, the ALJ relied on statements from physicians as to Ybarra's reduced effort on testing and inconsistencies between Ybarra's observed range of motion and range of motion when he was asked to complete certain maneuvers.  AR 17, 19, 20. In testing performed by Dr. Schludermann in November 2005, the doctor noted at several points that he had difficulty evaluating Ybarra's claims of lower back and neck pain because Ybarra did not appear motivated for testing.  See AR 324 ("Effort: markedly reduced especially for strength and range of motion"); AR 325 ("Range of Motion: of most joints was:  markedly reduced and was felt not to be accurate.  There were significant inconsistencies with observed range of motion during the examination and interview compared to the range of motion when asked to move his limbs etc voluntarily"); AR 326 ("Pain behavior=appeared significant [reaction out of proportion of objective findings])"); AR 327 (on sensory exam testing, sharp touch to hands was inconsistent).  Dr. Schludermann concluded, "today there was significant reduction in effort and the numerous inconsistencies with strength and range of motion maneuvers that limited the evaluation."  AR 327.  The ALJ's consideration of these statements by Dr. Schludermann was appropriate in considering Ybarra's credibility.

The ALJ also relied on the opinions of other physicians in assessing Ybarra's subjective symptom testimony.  With regard to depression, Dr. Wicher noted that Ybarra's symptoms were

mild, did not have a significant impact on his level of functioning, and did not preclude his

ability to work.  AR 18, 19, 218.  Reviewing physician Dr. Jensen concluded that Ybarra retained

the residual functional capacity for light exertion work.  AR 20.  Dr. Ogisu also opined that

Ybarra was able to work.  AR 21.  The ALJ correctly considered these medical opinions in

evaluating Ybarra's testimony.

The ALJ also noted that Ybarra was able to work despite his previous back surgeries, and

that he was laid off from his last job because of lack of work as opposed to inability to work as a

result of his impairments.  AR 20.  Consideration of this evidence was appropriate by the ALJ in

assessing Ybarra's testimony and credibility.

The ALJ did, however, fail to adequately support his credibility finding as to some of

Ybarra's testimony.  This court agrees with Ybarra's assignment of error with regard to some of

his complaints of neck and leg pain.  With regard to neck and leg pain, the ALJ wrote that

"claimant's statements concerning the intensity, duration and limiting effects of these symptoms

are not entirely credible for the reasons discussed above."  AR 18.  This is not a clear and

convincing reason for rejecting Ybarra's testimony, and does not provide the requisite citations to

specific evidence of record.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  To the extent

that the ALJ failed to consider evidence of record that supports Ybarra's step two argument as to

neck pain and radiculopathy, the ALJ did not provide the required clear and convincing reasons

for rejecting this aspect of Ybarra's testimony.

Foundation for Step Four Findings

Ybarra contends that the ALJ's improperly rejected evidence and erroneous omission of

some severe impairments at step two caused deficiencies to the hypothetical posed to the VE at

step four.  This court agrees.  Because the ALJ failed to accurately assess some of the limitations of Ybarra's spinal condition in formulating his RFC and failed to provide accurate limitations to the VE, the ALJ's finding at step four is flawed and the VE's testimony can not constitute substantial evidence to support the ALJ's determination that Ybarra is not disabled.  See Russell v. Sullivan, 930 F.2d 1443, 1445 (9th Cir. 1991) (explaining that hypothetical questions must set out all claimant's limitations and assumptions in the hypothetical must be supported by the record for VE's opinion to have evidentiary value).  After reconsideration of severe impairments at step two and reformulation of Ybarra's RFC, the ALJ must make a new finding at step four.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Page 22 - FINDINGS AND RECOMMENDATION

CONCLUSION

For the foregoing reasons, this court recommends remanding this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due July 23, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due August 6, 2007, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 6th day of July, 2007.


    /s/ Dennis James Hubel
Honorable Dennis J. Hubel
United States Magistrate Judge